UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CURTAVIOUS SIMPSON AND                                                          PLAINTIFFS
MARCUS LAWSON

V.                                                        CIVIL ACTION NO. 3:21-CV-818-DPJ-FKB

HINDS COUNTY, MISSISSIPPI                                                        DEFENDANT

ORDER

Defendant Hinds County seeks summary judgment on the remaining claims against it in this § 1983 failure-to-protect case. Mot. [25]. As explained below, its motion is granted.

I.      Facts and Procedural History

Plaintiffs Curtavious Simpson and Marcus Lawson were inmates at the Hinds County Detention Center in Raymond, Mississippi, in April 2019. Simpson was a convicted prisoner; Lawson was a pretrial detainee. They allege that "a group of inmates who were not locked in their cells[] initiated an inmate[-]on[-]inmate attack" in which they were injured. Compl. [1] ¶ 12. Plaintiffs filed this lawsuit against Hinds County on December 22, 2021, asserting § 1983 claims for failure to protect and excessive force.

In their Complaint, Plaintiffs state that Hinds County has been under a federal consent decree regarding the conditions at the Hinds County Detention Center since 2016. They allege that the decree gave Hinds County notice of problems at the facility

> including an unacceptable degree of gang activity that compromised security and safety [and] that contributed to employee and inmate fraternization, inmate and employee collusion[,] and graft that undermined security and safety; [and] inadequate training and staffing, inadequate supervision, inadequate training and enforcement of core values, [and] failure to perform and enforce standard operating procedures for the safe and efficient prison operations.

*Id.* ¶ 7. Plaintiffs say these conditions ultimately led to their assaults at the hands of other inmates.

After suit was filed, Hinds County sought to narrow the issues through two motions for judgment on the pleadings. The Court granted the first (dismissing the excessive-force claim) but denied the second related to the failure-to-protect claims. Plaintiffs conducted no discovery on the surviving claims, and once the discovery period closed, Hinds County moved for summary judgment. The Court has jurisdiction over the subject matter and the parties.

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a

genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III. Analysis

As Plaintiffs note in their summary-judgment response, convicted prisoners like Simpson and pretrial detainees like Lawson "have a constitutional right to . . . protection from harm during their confinement." *Brumfield v. Hollins*, 551 F.3d 322, 327 (5th Cir. 2008) (discussing pretrial detainees' Fourteenth Amendment due-process right to protection); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (explaining that Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of [convicted] inmates" (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984))). The standard for a pretrial detainee pursuing a Fourteenth Amendment due-process claim for failure to protect "is the same as that for a prisoner under the Eighth Amendment." *Cadena v. El Paso County*, 946 F.3d 717, 727 (5th Cir. 2020) (citing *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019)).

Claims alleging a failure to protect under the Eighth or Fourteenth Amendment are generally actionable under 42 U.S.C. § 1983 if plaintiffs can show "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004). But to hold a municipality like Hinds County liable under § 1983, Plaintiffs must prove "three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 1995) (quoting *Monnell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)); *see Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 759 (5th Cir. 1993) ("In order for municipal liability to attach, plaintiffs must offer

evidence of not simply a decision, but a 'decision by the city itself to violate the Constitution.'" (quoting *City of Canton v. Harris*, 489 U.S. 378, 395 (1989) (O'Connor, J., concurring))).

Plaintiffs attempt to meet the test for municipal liability by citing two exhibits: (1) a transcript excerpt from *United States v. Hinds County*, No. 3:16-CV-489-CWR-BWR, and (2) Plaintiff Simpson's affidavit. The County says the Court must ignore both, so before considering Plaintiffs' arguments, it must examine these exhibits.

Starting with the transcript, the first page states that it records a May 9, 2019 "status conference" in *United States v. Hinds County*. *See* Tr. [29-2] at 1 (capitalization altered). As Hinds County correctly notes in the present case, Plaintiffs submitted only five of the 112 pages from this transcript, leaving it unclear who is speaking, whether they are speaking from personal knowledge, or if they are testifying under oath. It is therefore impossible to know whether the statements made in those excerpts could be offered in a form admissible at trial. *See* Fed. R. Civ. P. 56(c)(2). The Court has not considered the transcript.

Simpson's affidavit is another matter. The County first argues that it must be rejected as self-serving and uncorroborated. Def.'s Reply [30] at 5. That might be true if Simpson merely offered conclusory assertions. *See TIG Ins. Co.*, 276 F.3d at 759 (noting that speculation and conclusory statements are not competent summary-judgment evidence). But not everything in Simpson's affidavit can be cast aside as conclusory, and Rule 56(c)(1)(A) expressly allows a party to oppose summary judgment by citing "affidavits or declarations." That rule does not say those affidavits must be supported by additional evidence. *See Simmons v. Lyons*, 746 F.2d 265, 270 (5th Cir. 1984) (holding that plaintiff's affidavit created material dispute under Rule 56 because it contained "factual averment that raise[d] an issue"). The County alternatively argues that the affidavit is too vague to consider, giving as an example Simpson's claim that his cell

4

door would not lock without stating the cell number. Def.'s Reply [30] at 5 n.5. Such arguments go to weight. Accordingly, the Court will consider the non-conclusory assertions in Simpson's affidavit in the light most favorable to Plaintiffs.

But even in that light, Simpson's affidavit falls short of creating a material dispute over the County's liability. In the episodic-act context, a plaintiff must show "(1) that [a] municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Garza*, 922 F.3d at 634 (quoting *Brumfield*, 551 F.3d at 331).[1]

> To demonstrate subjective deliberate indifference under the first prong, the plaintiff must show that the municipal employee "knew of and disregarded an excessive risk to the [detainee's] health or safety." *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). "Under the second prong, the plaintiff must identify a policymaker and show that an official policy is the 'moving force' behind the municipal employee's allegedly unconstitutional act." *Piotrowski*, 237 F.3d at 578. The objective deliberate indifference standard "considers not only what the policymaker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the [pretrial detainee's] rights." *Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002). . . .

*Brumfield*, 551 F.3d at 331. "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v.*

---

[1] Plaintiffs seem to acknowledge that this is an episodic-act case, describing the incident as "the specific episodic act that resulted from Defendant's prolonged indifference." Resp. [29] at 5 (citing *Garza*, 922 F.3d at 634 (examining test for municipal liability for episodic act)). That seems correct; with episodic acts, "an actor usually is interposed between the detainee and the municipality." *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997). And here, Plaintiffs argue that the County's correctional officers violated "their sworn duty to protect" in various ways. Resp. [29] at 6. But even viewed as a conditions-of-confinement claim, the evidence still falls short of creating a jury question regarding municipal liability.

*Brown*, 520 U.S. 397, 410 (1997)). "Usually a plaintiff must show a pattern of similar violations" to establish deliberate indifference by a municipal defendant. *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010).

Through his affidavit, Simpson gives damning testimony that mostly unnamed correctional officers knew a fight was imminent and knew conditions at the jail made the attack more likely. *See generally* Simpson Aff. [29-1]. For example, he states that correctional officers "knew that the [cell] locks were defective and faulty and nothing was done about it." *Id.* ¶ 5. He also recounts conversations with correctional officers regarding gang-related threats and tensions. *Id.* ¶ 10. And he says rival gang members openly taunted the officers shorty before the attack, telling them they would start a fight as soon as the officers left. *Id.* ¶ 18.

If true—and the Court must assume so—the officers' conduct might create a triable issue as to them. But Hinds County "cannot be vicariously liable for the alleged actions of its jailers." *Whitt v. Stephens County*, 529 F.3d 278, 283 (5th Cir. 2008); *see also Piotrowski*, 237 F.3d at 578. And the only thing the affidavit says about anyone other than correctional officers is that "the administration had no real concern about the risk of attacks." Simpson Aff. [29-1] ¶ 11. Yet Simpson never explains who constitutes "the administration." *Id.* Jail administrators could include individuals who are not policymakers capable of creating liability for the County. *See Piotrowski*, 237 F.3d at 578. Moreover, the affidavit provides no facts upon which Simpson bases his claim that the unidentified administrators knew about the alleged violations and failed to act. Speculation and conjecture are insufficient to avoid summary judgment. *TIG Ins. Co.*, 276 F.3d at 759.

The only other purported evidence Plaintiffs mention is the 2016 consent decree in *United States v. Hinds County*, *supra*. They do so in two ways. First, they state that "after

6

entering into a Consent Decree to address some of [the issues about which Plaintiffs complain, the County] made no legitimate effort to ensure proper management or training, or to discipline employees to correct these egregious failures." Resp. [29] at 4. Plaintiffs then mention the consent decree when disputing the County's argument that they are trying to impose strict liability. According to Plaintiffs, "[t]hat many of the problems complained of by Plaintiffs date back to the Consent Decree, or before, is not an attempt to establish 'strict liability,' but instead, as noted in *Wilson*, 'the long duration of a cruel prison condition may make it easier to establish knowledge and hence some form of intent.'" *Id.* at 5 (quoting *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)).

To begin, the consent decree is not part of this record, but assuming the Court should take judicial notice of it, the document is 64 pages long, and Plaintiffs are required to cite its "particular parts" that support their arguments. Fed. R. Civ. P. 56(c)(1)(A). They did not, and the Court is under no duty "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) (quoting *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)). That seems even more true when the referenced material falls beyond the record.

Assuming the consent decree does cover the same issues Plaintiffs dispute in this case, the gist of Plaintiffs' argument is that the County "made no legitimate effort" to address those issues after they were raised in 2016. Resp. [29] at 4. But Plaintiffs cite no record evidence to support that assertion, *see id.*, so the Court must disregard it, *see* Fed. R. Civ. P. 56(c)(1) (stating that party making factual assertion must support it); *id.* R. 56(c)(3) (stating that "court need consider only the cited materials"). Indeed, Plaintiffs offer no record evidence addressing any

acts or omissions by the County between the 2016 consent decree and the subject attack in 2019.[2]

And there's another problem.  As the County argues in its opening memorandum, Plaintiffs have not identified a relevant policymaker.  Def.'s Mem. [16] at 9 (quoting *Piotrowski*, 237 F.3d at 578); *see also Armstrong v. Ashley*, 60 F.4th 262, 276 (5th Cir. 2023) ("To find the City of Shreveport liable under *Monell*, Armstrong must identify a policymaker."); *McWilliams v. City of Houston*, No. 21-20369, 2022 WL 17337820, at *6 (5th Cir. Nov. 30, 2022) (affirming dismissal where "Plaintiffs never identified any official or entity with final policy making authority other than the City" (punctuation altered)).

This case demonstrates one reason that requirement exists.  As noted, Simpson faults unnamed administrators in his affidavit.  Yet some cases indicate that sheriffs are the appropriate policymakers in jail-related cases.  *See Brooks v. George County*, 84 F.3d 157, 169 (5th Cir. 1996) ("Sheriffs in Mississippi are final policymakers with respect to all law enforcement decisions made within their counties.").  If the sheriff is the policymaker in this case, the Court can take judicial notice that Hinds County has had several sheriffs since 2016 when the consent decree was signed.  Without evidence indicating what any relevant policymaker may have known and done, Plaintiffs cannot establish a jury question on objective deliberate indifference.

In sum, the consent decree coupled with Simpson's affidavit indicate that there were problems at the jail in 2016 and that there were problems in 2019 (known to the correctional officers).  But even assuming the issues in 2016 and 2019 were the same, that leaves significant

---

[2] The County urges the Court to dismiss this case because Plaintiffs supposedly violated a prior order instructing them to conduct discovery on these issues.  But the Court never said that; it merely held that Plaintiffs Complaint stated a claim for failure to protect, so the "case should proceed to discovery."  Order [24] at 5.  Whether Plaintiffs conducted any was up to them.

gaps in the proof, including: (1) what efforts (if any) were taken to address the problems purportedly covered by the consent decree; (2) the identity of the policymaker in 2019 (which could have been different from the policymaker in 2016); (3) what the relevant policymaker knew and did regarding the conditions that existed in 2019; and (4) whether an official policy or custom was the driving force behind the alleged constitutional violations.

Absent that information, Plaintiffs can only speculate as to the essential elements for municipal liability. *See TIG Ins. Co.*, 276 F.3d at 759. And under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The County has done that in this case.

IV.  Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Hinds County's Motion for Summary Judgment [25] is granted. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 30th day of March, 2023.

                                        s/ *Daniel P. Jordan III*
                                        CHIEF UNITED STATES DISTRICT JUDGE